UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

GIOVANNI RODRIGUEZ (a/k/a King Karrot),

        Plaintiff,                  **MEMORANDUM AND ORDER**

      - against -                    18 Civ. 4805 (NRB)

THE CITY OF NEW YORK et al.,

        Defendants.

----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Giovanni Rodriguez, a rap artist who performs under the stage name "King Karrot," brings this action pursuant to 42 U.S.C. § 1983 against the City of New York ("City"), former New York City Police Department ("NYPD") Commissioner James O'Neill, NYPD Detective Bernard Solomon, and John and/or Jane Doe NYPD officers (collectively, "defendants"). Plaintiff asserts, *inter alia*, constitutional violations arising from his placement into the NYPD's "gang database," which defendants refer to as the NYPD's "Criminal Group Database." In particular, plaintiff maintains that the NYPD falsely informed the owners of two concert venues that plaintiff was a "gang member" or "gang affiliate" and threatened to shut down those venues if plaintiff was permitted to perform, thereby preventing plaintiff from performing at two concerts in September and October of 2017.

1

Presently before the Court is defendants' partial motion to dismiss. For the reasons set forth herein, which more fully explain the Court's rulings at oral argument, defendants' partial motion to dismiss is granted with respect to plaintiff's Monell claims and denied with respect to the dismissal of claims against Detective Solomon. The Court also grants defendants' motion to dismiss plaintiff's state constitutional claims.

**I. Background**[1]

Plaintiff alleges that on May 15, 2017, he was exiting a deli in the Bronx when he was shot by an unknown shooter who had intended to shoot two members of the gang "Dub City," of which plaintiff maintains he is not a member. On May 26, 2017, plaintiff, along with his mother and his attorney, met with NYPD Detective Bernard Solomon to discuss the May 15 shooting. Plaintiff alleges that in retaliation for his inability to identify the individual who shot him on May 15, Detective Solomon initiated a process whereby plaintiff's name was added to the so-called "gang database," notwithstanding Detective Solomon's purported knowledge that plaintiff was not in fact a member of "Dub City" or any other gang. Thereafter, the NYPD is alleged to have made certain statements to

---

[1] The following facts are drawn from the operative complaint and are accepted as true for purposes of the Court's ruling on the instant motion. The Court draws all reasonable inferences in plaintiff's favor. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

2

venue owners and concert promoters regarding plaintiff's gang affiliation that resulted in plaintiff being removed from two performance lineups, thereby violating plaintiff's constitutional rights and, *inter alia*, depriving him of opportunities for professional advancement.

**A. Procedural History**

This action began on May 31, 2018, when plaintiff filed contemporaneously with his initial complaint an order to show cause seeking a temporary restraining order: (1) enjoining defendants from taking any action that would adversely affect plaintiff's ability to perform at concert venues within the NYPD's jurisdiction, including labeling plaintiff as a "gang member" or making other similar statements that would damage plaintiff's name and reputation; (2) directing defendants to remove plaintiff from the NYPD's "gang database"; (3) requiring defendants to produce all records used to support their classification of plaintiff as a "gang member"; and (4) requiring the NYPD to produce internal records describing the policies and procedures for entering individuals into its "gang database." Following a show cause hearing, the Court issued an Order on defendants' consent (the "May 31 Order") temporarily restraining the NYPD from adversely affecting plaintiff's concert performance that had been scheduled

for the following day.[2]  See ECF No. 3.  With minor modifications designed to make clear that defendants were not precluded from informing concert venues that gang activity could be afoot at certain performances, the May 31 Order was thereafter extended to several additional performances.  See ECF Nos. 15, 20, 39.

On October 30, 2018, plaintiff filed an amended complaint that included, *inter alia*, newly asserted Monell and state law claims.  See ECF No. 23 at 12-20.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants now move to partially dismiss that complaint as pled against defendants NYPD Commissioner O'Neill and Detective Solomon, as well as plaintiff's federal claims of municipal liability.[3]

For substantially the reasons stated at oral argument, the Court grants defendants' motion to dismiss plaintiff's Monell and

---

[2] At the show cause hearing, the Court acknowledged plaintiff's First Amendment right to perform in the upcoming concerts but made clear that it had no intention of interfering with the NYPD's law enforcement functions by, for example, requiring that the NYPD remove plaintiff's name from the database. See ECF No. 4 at 9.

[3] While defendants devote several pages of their motion to arguing that Commissioner O'Neill should be dismissed for lack of personal involvement, see ECF No. 42 at 10-12, Commissioner O'Neill was named as a defendant solely in his official capacity.  See ECF No 23 at 1.  Accordingly, any claims against him are duplicative of the claims asserted against the City and need not be independently addressed.  See Anemone v. Metro. Transp. Auth., 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y. 2006) ("Where, as here, the entity also is named as a defendant, the official capacity claims are redundant and are properly dismissed.").

state constitutional claims, but denies defendants' motion insofar as it seeks the dismissal of claims against Detective Solomon.[4]

## II. Legal Standard

To withstand a Rule 12(b)(6) motion, the non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." Id. While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

---

[4] Because plaintiff has adequately pled that Detective Solomon was involved in the purported wrongdoing relating to plaintiff's individual claims (e.g., falsely identifying plaintiff as a "gang member" or "gang affiliate" and allegedly preventing plaintiff from performing in two concerts on that basis), the Court declines at this stage to dismiss Detective Solomon as a defendant.

incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010). For a document to be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents.'" DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

### III. **Discussion**

Plaintiff's Monell and state constitutional claims are addressed in turn.

#### A. **Monell Claims**

A municipality cannot be liable under section 1983 under the doctrine of respondeat superior; rather, a "plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008) (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 405 (1997)). To hold a municipality liable under 42 U.S.C. § 1983, a plaintiff

must establish (1) the existence of a municipal policy, custom, or practice, which (2) caused the alleged violation of the plaintiff's constitutional rights. Niles v. O'Donnell, No. 17 Civ. 1437 LTS BCM, 2017 WL 7369711, at *1 (S.D.N.Y. Aug. 22, 2017), report and recommendation adopted, No. 17 Civ. 1437 LTS BCM, 2018 WL 718415 (S.D.N.Y. Feb. 5, 2018).

With respect to "the existence of a municipal policy, custom, or practice," id., plaintiff has alleged two broadly related policies: (1) the operation of a "gang database" that, *inter alia*, purportedly identifies gang members or affiliates on the basis of overly broad and arbitrary criteria;[5] and (2) the allegedly disproportionate policing of rap and/or hip-hop concerts.

With respect to the first policy, plaintiff's Monell claim fails at the outset given that plaintiff was not even added to the gang database until well after the NYPD purportedly prevented

---

[5] In support of their motion defendants have submitted (1) a copy of the Criminal Group Database Report (hereinafter, the "Database Report"), which reflects that plaintiff was "activated" in the database on September 13, 2018, see ECF No. 37-2; and (2) the transcript of a senior NYPD official's statement before the New York City Council regarding, *inter alia*, the criteria and mechanisms by which individuals are added to and removed from the database, see ECF No. 37-3. While the Court has not considered the NYPD's statement before the New York City Council in resolving the instant motion, it has considered the Database Report, which the Court deems integral to the operative complaint.
In addition to the fact that plaintiff's federal constitutional claims are premised principally upon the circumstances and effects of his placement into the database, plaintiff had actual notice of the report prior to filing his amended complaint, see ECF No. 44 at 13, thus minimizing any harm that otherwise could result from its consideration. See Chambers, 282 F.3d at 153 (noting that "the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered").

plaintiff's two scheduled performances.⁶ See Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, Monell prohibits a finding of liability against the City."). Nor can plaintiff pursue a Monell claim based upon the NYPD's purported policy of disproportionately policing rap and hip-hop concerts, which plaintiff -- unlike, perhaps, the concert venues themselves -- would lack standing to challenge as a standalone policy.

**B. State Constitutional Claims**

Plaintiff further alleges that defendants violated his right to due process and to freely speak, assemble, and associate as guaranteed by several provisions of the New York State Constitution. See ECF No. 23 ¶ 140. Defendants maintain that such claims are barred because they are duplicative of plaintiff's § 1983 claims. See ECF No. 36 at 20. While plaintiff does not dispute that "there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983," Hershey v. Goldstein, 938 F. Supp. 2d 491, 520 (S.D.N.Y.

---

⁶ The Database Report reflects that plaintiff was not "activated" as a "gang member" until September of 2018 (i.e., nearly a year after the two concerts that the NYPD purportedly caused to be cancelled). See ECF No. 37-2. Because plaintiff cannot plausibly allege that injuries sustained nearly a year prior to his inclusion on the database were "directly caused" by the City's policy of operating said database, plaintiff cannot plead a Monell claim with respect to that policy.

2013), plaintiff maintains that his state constitutional claims against the City should not be dismissed because § 1983 does not provide for respondeat superior liability. Stated otherwise, according to plaintiff, § 1983 is inadequate as an alternative remedy because it does not permit vicarious municipal liability.

This argument fails because it fundamentally misconstrues the nature of respondeat superior, which -- far from providing an "alternative remedy" for an alleged constitutional violation -- is a theory of vicarious liability that must attach to a viable underlying claim. See Farb v. Baldwin Union Free Sch. Dist., No. 05 Civ. 0596 (JS), 2006 WL 8439500, at *11 (E.D.N.Y. Mar. 3, 2006) ("Plaintiff's Complaint incorrectly refers to respondeat superior as a separate and independent cause of action when in fact it is a theory that must attach to an underlying claim."). No such underlying claim exists, however, where (as here) a plaintiff asserts claims under the New York State Constitution that he also asserts as § 1983 claims. Indeed, in such cases, the state constitutional claims are routinely dismissed as duplicative. See, e.g., Ying Li v. City of New York, 246 F. Supp. 3d 578, 639 (E.D.N.Y. 2017) (dismissing state constitutional due process claims where plaintiff "ha[d] asserted the same due process claim under Section 1983, making Plaintiff's State constitutional claim duplicative"). See also Wahad v. FBI, 994 F. Supp. 237, 240 n.4 (S.D.N.Y. 1998) ("Section 1983 need not provide the exact same

standard of relief in order to provide an adequate remedy that would vindicate Plaintiff's due process claims."). Once any underlying state constitutional claim is dismissed, there simply is no claim for which the City can be liable under the doctrine of respondeat superior.

In short, because plaintiff has an adequate remedy under § 1983 for the alleged violations of the New York State Constitution (i.e., notwithstanding § 1983's prohibition on respondeat superior liability), plaintiff's state constitutional claims are duplicative and, therefore, dismissed.

## IV. Conclusion

For the foregoing reasons, defendants' partial motion to dismiss is GRANTED with respect to plaintiff's Monell and state constitutional claims, and DENIED with respect to Detective Solomon. With respect to plaintiff's individual claims, the parties shall continue discovery pursuant to the schedule set forth in the parties' letter of February 7, 2020. See ECF No. 48. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 41.

**SO ORDERED.**

Dated: New York, New York
March 9, 2020

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE