UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

GIOVANNI RODRIGUEZ (a/k/a King Karrot),

              Plaintiff,              **MEMORANDUM AND ORDER**

        - against -              18 Civ. 4805 (NRB)

THE CITY OF NEW YORK et al.,

              Defendants.

----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Giovanni Rodriguez, a rap artist who performs under the stage name "King Karrot," brought this action pursuant to 42 U.S.C. § 1983 against the City of New York ("City"), former New York City Police Department ("NYPD") Commissioner James O'Neill, NYPD Detective Bernard Solomon, and John and/or Jane Doe NYPD officers (collectively, "defendants").  Plaintiff asserts, <u>inter alia</u>, constitutional violations arising from his placement in the NYPD's "gang database," which defendants refer to as the NYPD's "Criminal Group Database" (hereinafter the "Database").  Further, independent of his inclusion in the Database, plaintiff maintains that the NYPD falsely informed concert promoters, the owners of two concert venues, and members of the media that plaintiff was a "gang member" or "gang affiliate" and threatened to shut down those venues if plaintiff was permitted to perform.  Plaintiff alleges that these actions prevented plaintiff from performing at two

1

concerts in September and October of 2017.  Separately, plaintiff alleges that when he was at the hospital after he was shot in May 2017, members of the NYPD took a DNA swab from his mouth as well as his cell phone and clothing in violation of his Fourth Amendment rights.[1]

Presently before the Court is plaintiff's motion for leave to file a Proposed Second Amended Complaint ("PSAC"), ECF No. 81-1.[2] Defendants oppose this motion.  For the reasons set forth herein, plaintiff's motion is granted in part and denied in part.

## I. Background[3]

### A. Facts

Plaintiff alleges that on May 15, 2017, he was exiting a deli in the Bronx when he was shot by an unknown shooter who had intended to shoot two members of the gang "Dub City," of which plaintiff maintains he is not a member.  Plaintiff was taken to a Bronx hospital to receive treatment for his injuries.  There, members of

---

[1] During oral argument, plaintiff acknowledged that the clothing was evidentiary in nature, Tr. of Oral Arg., Feb. 4, 2021, ECF No. 85 at 5:17-6:6, and that the police stated a willingness to return the phone, though it is unclear why it was never returned.

[2] Initially plaintiff filed the PSAC as an exhibit to his memorandum in support of his motion for leave to file a second amended complaint.  ECF No. 70-2.  Thereafter, per order of the Court, ECF No. 78, plaintiff filed an updated version of the PSAC with certain clarifications, ECF No. 81-1. Throughout this Memorandum and Order, the Court refers to the version of the PSAC filed at ECF No. 81-1.

[3] The facts set forth in this section are drawn from the operative complaint – the First Amended Complaint ("FAC"), ECF No. 23 – and are accepted as true for purposes of the Court's ruling on the instant motion.  The Court draws all reasonable inferences in plaintiff's favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

the NYPD are alleged to have seized plaintiff's property, including his clothes and cell phone.  While questioning plaintiff about the shooting, NYPD defendants are also alleged to have taken a DNA swab sample from plaintiff's mouth.  Further, on a date not specified in the FAC, unnamed individuals from the NYPD are alleged to have told members of the media, including Rocco Parascandola of the New York Daily News, that plaintiff was a member of Dub City and had been arrested as a minor.

On May 26, 2017, plaintiff, along with his mother and his attorney, met with NYPD Detective Bernard Solomon at plaintiff's attorney's office to discuss the May 15 shooting.  Plaintiff alleges that in retaliation for his inability to identify the individual who shot him on May 15, 2017, Detective Solomon initiated a process to add plaintiff to the Database, notwithstanding Detective Solomon's purported knowledge that plaintiff was not in fact a member of "Dub City" or any other gang.

Months later, the NYPD also is alleged to have made certain statements to venue owners and concert promoters regarding plaintiff's gang affiliation that resulted in plaintiff being removed from two performance lineups — one on September 19, 2017 and another on October 13, 2017 — thereby violating plaintiff's constitutional rights and, inter alia, depriving him of opportunities for professional advancement.

About one year later, on September 13, 2018, plaintiff was
actually added to the Database.[4]

## B. Procedural History

This action began on May 31, 2018, when plaintiff filed
contemporaneously with his initial complaint an order to show cause
seeking a temporary restraining order: (1) enjoining defendants
from taking any action that would adversely affect plaintiff's
ability to perform at concert venues within the NYPD's
jurisdiction, including labeling plaintiff as a "gang member" or
making other similar statements that would damage plaintiff's name
and reputation; (2) directing defendants to remove plaintiff from
the NYPD's Database; (3) requiring defendants to produce all
records used to support their classification of plaintiff as a
"gang member"; and (4) requiring the NYPD to produce internal
records describing the policies and procedures for entering
individuals into the Database.  Following a show cause hearing,
the Court issued a limited Order on defendants' consent (the "May
31 Order") temporarily restraining the NYPD from adversely
affecting plaintiff's concert performance that had been scheduled

---

[4] Plaintiff did not allege the date when he was added to the Database in
either his original or First Amended Complaint.  ECF Nos. 1, 23.  However, in
support of their partial motion to dismiss, and to defend against plaintiff's
allegations, defendants filed a form entitled "Activate Person Into Criminal
Group List," which reflects that plaintiff was activated in the Database on
September 13, 2018 following "a long term investigation."  ECF No. 37-2.  In
its Memorandum and Order of March 9, 2020, the Court deemed this document
integral to the operative complaint.  ECF No. 51 n.5.  Consistent with this, in
the PSAC, plaintiff alleges the now-undisputed fact that he was activated into
the Database on September 13, 2018.  ECF No. 81-1 ¶ 57.

for the following day.[5]  See ECF No. 3.  With minor modifications designed to make clear that defendants were not precluded from informing concert venues that gang activity could be afoot at certain performances, the May 31 Order was thereafter extended to several additional performances.  See ECF Nos. 15, 20, 39.

On October 30, 2018, plaintiff filed the FAC that included, inter alia, newly asserted Monell and state law claims.  See ECF No. 23 at 12-20.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants moved to partially dismiss that complaint as pled against defendants NYPD Commissioner O'Neill and Detective Solomon, as well as plaintiff's state law claims and federal claims of municipal liability.  ECF No. 36.

On March 9, 2020, the Court granted defendants' partial motion to dismiss with respect to both of plaintiff's Monell claims.  ECF No. 51.  The Court dismissed plaintiff's Monell claim (the FAC's sixth cause of action), which challenged the operation of the Database, on the basis that plaintiff was not added to the Database until "well after the NYPD purportedly prevented plaintiff's two scheduled performances."  Id. at 7-8.  The Court also dismissed plaintiff's other Monell claim (the FAC's fifth cause of action),

---

[5] At the show cause hearing, the Court acknowledged plaintiff's First Amendment right to perform in the upcoming concerts but made clear that it had no intention of interfering with the NYPD's law enforcement functions by, for example, requiring that the NYPD remove plaintiff's name from the Database. See ECF No. 4 at 9.

which challenged the allegedly disproportionate policing of rap and/or hip-hop concerts, because plaintiff, unlike perhaps the concert venues themselves, "lack[ed] standing to challenge [it] as a standalone policy."  Id. at 8.  The Court further granted defendants' motion to dismiss plaintiff's state constitutional claims, finding that they were duplicative of remedies available under plaintiff's § 1983 claims.  Id. at 10.  The Court denied the partial motion to dismiss with respect to Detective Solomon, finding that plaintiff adequately pled that Detective Solomon was involved in the purported wrongdoing relating to plaintiff's individual claims (e.g., falsely identifying plaintiff as a "gang member" or "gang affiliate" and allegedly preventing plaintiff from performing in two concerts on that basis).  Id. at 5 n.4.

On May 15, 2020, plaintiff filed a stipulation and proposed order with the Court, seeking to file a Second Amended Complaint ("Initial Proposed Second Amended Complaint" or "IPSAC").  ECF No. 53.   Thereafter, the case was stayed for 90 days due to complications arising from the COVID-19 pandemic.  ECF Nos. 54-55.   On July 17, 2020, the Court issued an endorsed letter declining to sign plaintiff's proposed stipulation and order regarding the IPSAC.  ECF No. 56.  On August 17, 2020 plaintiff moved for reconsideration of the Court's letter.  ECF Nos. 61-62. On August 27, 2020, the Court denied plaintiff's motion for reconsideration but granted leave for plaintiff to file a motion

to amend his FAC.  ECF No. 65.[6]  The Court now addresses plaintiff's

motion for leave to file his Proposed Second Amended Complaint.

ECF No. 69.[7]

A description of the PSAC is necessary to the resolution of

the instant motion.  The PSAC seeks to add, inter alia: (1)

multiple NYPD defendants previously named as John Doe defendants

and allegations related to each; (2) a third cause of action

alleging procedural due process violations against various NYPD

defendants; (3) a fourth cause of action alleging equal protection

violations against the City of New York; and (4) allegations to

the eleventh cause of action asserting violations of the New York

State Constitution.[8]  ECF No. 81-1.  Plaintiff also proposes to

add  various  factual  allegations  throughout  the  complaint,

including, for example, details about the timing of plaintiff's

addition  to  the  Database,  Parascandola's  New  York  Daily  News

article, and plaintiff's hospital visit on May 15, 2017.  Id.

---

[6] On September 16, 2020, defendants filed a letter representing that they
provided plaintiff with the names and current commands of individuals whose
identities he sought in discovery and who have now been included in his PSAC.
ECF No. 68.

[7] The PSAC, ECF No. 81-1, differs from the IPSAC, ECF No. 53-1, in certain
respects, including: (1) in the IPSAC, plaintiff reiterated the dismissed Monell
claims, but did not do so in the PSAC, and (2) plaintiff proposed to add
different NYPD officers in the IPSAC and the PSAC.

[8] During  oral  argument,  plaintiff  agreed  to  voluntarily  dismiss  the
eleventh cause of action given the Court's ruling that defendants Baez and Smith
could be added as defendants to the sixth cause of action, which is based on
the Fourth Amendment.  Tr. of Oral Arg., Feb. 4, 2021, ECF No. 85 at 11:2-6.
Accordingly, the Court does not address further plaintiff's proposed additions
to the eleventh cause of action.

Consistent with the Court's prior Memorandum and Order, which dismissed the FAC's <u>Monell</u> claims, ECF No. 51, the PSAC eliminates the FAC's Fifth and Sixth Causes of Action.  As explained above, the Fifth Cause of Action was a <u>Monell</u> claim alleging, <u>inter alia</u>, policing of rap and hip-hop performances in violation of the First and Fourteenth Amendments because "of the content of the music and/or because the performers are overwhelmingly non-white."  ECF No. 23 ¶¶ 88-93.  The Sixth Cause of Action was a <u>Monell</u> claim alleging, <u>inter alia</u>, maintenance of a "gang database" which "consists almost entirely of people who are non-white" in violation of the First and Fourteenth Amendments.  ECF No. 23 ¶¶ 94-100.

## II.  **Legal Standard**

Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely give[n] ... when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "a motion to amend should be denied if there is an 'apparent or declared reason - such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'"  <u>Dluhos v. Floating and Abandoned Vessel Known as "New York"</u>, 162 F.3d 63, 69 (2d Cir. 1998) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

"In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to

8

dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." <u>Aetna Cas. & Sur. Co. v. Aniero Concrete Co.</u>, 404 F.3d 566, 604 (2d Cir. 2005) (citation omitted); <u>see also</u> <u>In re Sanofi Sec. Litig.</u>, No. 14 Civ. 9624, 2016 WL 3566233, at *2 (S.D.N.Y. June 24, 2016) ("An amendment is futile if the proposed amended complaint would be subject to immediate dismissal") (citing <u>Jones v. New York State Div. of Military & Naval Affairs</u>, 166 F.3d 45, 55 (2d Cir. 1999)) (internal quotation marks omitted).

Amendments to a complaint may also be barred if they violate applicable statutes of limitation.  "In § 1983 actions, state statutes of limitations for personal injury actions and state tolling rules generally govern the time a party has to bring [his] action." <u>Horn v. Politopoulos</u>, 628 F. App'x 33, 34 (2d Cir. 2015); <u>see also</u> N.Y. C.P.L.R. § 214(5).  In New York, the applicable limitations period is three years.  N.Y. C.P.L.R. § 214(5).  Under Second Circuit law, "[w]hen a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes." <u>Rothman v. Gregor</u>, 220 F.3d 81, 96 (2d Cir. 2000) (internal quotation marks omitted).

### III. Discussion

Plaintiff's proposed amendments, set forth above, are addressed in turn.

## A. Replacement of John Doe Defendants

Plaintiff seeks to amend his complaint to replace John Doe defendants with NYPD defendants Sergeant Juan Ventura, Captain Igor Pinkhasov, Detective Jeffrey Scalf, Sergeant Leo Nugent, Detective Sean Smith, Detective Jason Chandler, Detective Harry Mendez, and Officer Edwin Baez.  ECF No. 81-1.  Because defendants do not challenge the inclusion in the complaint of Ventura, Pinkhasov, Scalf, Nugent, Chandler, and Mendez, the Court permits amendment to include these NYPD defendants.  On the other hand, defendants challenge the inclusion of Baez and Smith on the basis that the statute of limitations bars their insertion into the complaint.

The PSAC introduces allegations regarding Baez and Smith in support of plaintiff's Fourth Amendment claim.  ECF No. 81-1 ¶¶ 114-121.  Specifically, the PSAC alleges that Baez and Smith took a DNA swab from plaintiff, unlawfully seized plaintiff's property, including his clothes and cell phone, and questioned him at the hospital on May 15, 2017.  Id. ¶¶ 33-36.  The statute of limitations on these claims thus expired on May 15, 2020.

As described in Part I.B, supra, plaintiff tried on more than one occasion to file the PSAC.  On May 15, 2020, defendants consented to plaintiff's filing of a stipulation indicating plaintiff's intent to file the Initial Proposed Second Amended Complaint, which included Baez and Smith.  ECF No. 53.  The

10

stipulation appended a draft of the IPSAC.  ECF No. 53-1.  Shortly

thereafter, the case was stayed, and as a result of orders from

the Court and challenges from plaintiff, plaintiff did not file

the instant motion for leave to amend until September 17, 2020 —

well past the expiration of the statute of limitations period.

The Court finds, however, that the IPSAC, filed alongside the

stipulation on May 15, 2020, gave notice to Baez and Smith about

the claims against them within the statute of limitations period.[9]

Here, where various procedural steps and the COVID-19 pandemic

interfered, "it is the date that [plaintiff] sought to amend to

add [defendants] that marks the date the action was commenced . .

. for statute of limitations purposes."  Teri v. Spinelli, 980 F.

Supp. 2d 366, 377 (E.D.N.Y. 2013); see also Lehal v. United States,

No. 13 Civ. 3923, 2015 WL 9592706, at *17 (S.D.N.Y. Dec. 29, 2015).

Accordingly, the Court finds that the proposed amendments adding

Baez and Smith to the complaint are timely.[10]

---

[9] The Court notes that the PSAC's allegations regarding Baez and Smith
are not entirely consistent with the allegations in the IPSAC.  Compare ECF No.
81-1 with ECF No. 53-1.  Nevertheless, the allegations in the IPSAC were
sufficient to put defendants Baez and Smith on notice within the statute of
limitations period that they were named in the lawsuit.

[10] In any event, plaintiff would be permitted to add Baez and Smith to the
complaint pursuant to the relation back doctrine set forth in Fed. R. Civ. P.
15(c).  See Byrd v. Abate, 964 F. Supp. 140, 146 (S.D.N.Y. 1997) (permitting
amendment of John Doe defendants where "it was the defense, rather than the
plaintiff, who failed to identify the individual defendant despite [plaintiff's]
requests for that information" and where "the identity of [defendant] was
information uniquely within the knowledge of Corporation Counsel").  Perhaps
the Corporation Counsel's awareness of this law, and their responsibility for
not having timely provided the identities of the John Doe defendants to
plaintiff, explains the otherwise inexplicable willingness of the Corporation
Counsel to agree to permit plaintiff to file an amended complaint adding new
officer defendants, whom they did not represent, on the cusp of the expiration

## B. Third Cause of Action: Procedural Due Process Claim

The PSAC adds a third cause of action, which alleges procedural due process violations pursuant to the Fourteenth Amendment ("Procedural Due Process Claim").  As written in the PSAC, this claim has two discrete factual bases.  First, plaintiff alleges that he was denied a "meaningful opportunity to challenge his inclusion" into the Database.  ECF No. 81-1 ¶ 90.  Second, plaintiff alleges that he was denied "his good name and reputation and a meaningful opportunity to be heard" when defendants notified venue owners and promoters about plaintiff's gang affiliation. ECF No. 81-1 ¶¶ 86-89.  This proposed amendment is denied because it is futile.

"Federal courts examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Francis v. Fiacco, 942 F.3d 126, 141 (2d Cir. 2019) (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)) (internal quotation marks omitted).

Defendants argue that the Procedural Due Process Claim is futile because the PSAC does not allege state interference with a

---

of the statute of limitations.  See ECF No. 53.

liberty interest — the first step of the procedural due process
analysis — under the "stigma plus" doctrine.  In order to establish
the deprivation of a liberty interest under the due process clause
based on loss of reputation, as claimed here, plaintiff must allege
"stigma plus."  Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994).
The stigma plus doctrine requires plaintiff to show "(1) the
utterance of a statement sufficiently derogatory to injure his or
her reputation, that is capable of being proved false, and that he
or she claims is false, and (2) a material state-imposed burden or
state-imposed alteration of the plaintiff's status or rights."
Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (internal
quotation marks omitted).   The Second Circuit has held that
defamation alone is not a deprivation of a liberty interest, even
if it leads to a significant loss of employment opportunities,
"unless it occurs in the course of dismissal or refusal to rehire
the individual as a government employee or during termination or
alteration of some other legal right or status."  Neu v. Corcoran,
869 F.2d 662, 667 (2d Cir. 1989) (citing Paul v. Davis, 424 U.S.
693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

As argued in his memorandum in support of his motion to amend,
however, plaintiff disputes that the Procedural Due Process Claim
(third cause of action) lends itself to the "stigma plus"

analysis,[11] which he argues is only applicable to his first cause
of action (the "Liberty Interest Claim").  Rather, plaintiff argues
that the balancing test in Mathews v. Eldridge, 424 U.S. 319
(1976), which determines whether an individual has received due
process, is the analytical framework for the proposed Procedural
Due Process Claim.[12]  ECF No. 77 at 5.

There is no question that in his memoranda, plaintiff
endeavors to rewrite his complaint to confine the first cause of
action (Liberty Interest Claim) to statements about his gang
affiliation to media, promoters, and venue owners that are
unrelated to his Database inclusion and to confine the third cause
of action (Procedural Due Process Claim) to inclusion in the
Database.  ECF No. 77 at 4-6.  But plaintiff's efforts fail,
because both the Liberty Interest Claim and the Procedural Due
Process Claim address NYPD officers' alleged communications with
promoters and venue owners regarding his gang affiliation as well
as plaintiff's addition to the Database.  See ECF No. 81-1 ¶¶ 67,

---

[11] Courts in this Circuit have relied on a stigma plus analyses where
plaintiffs challenged their inclusion in government databases before.  See,
e.g., Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994) (challenging plaintiff's
inclusion on the Central Register of suspected child abusers); Drew v. City of
New York, No. 18 Civ. 10557, 2020 WL 3869732, at *4 (S.D.N.Y. July 9, 2020)
(acknowledging applicability of stigma plus analysis to inclusion in government
databases).

[12] The Mathews test requires Courts to balance: "(1) the private interest
that will be affected by the official action; (2) the risk of an erroneous
deprivation of such interest through the procedures used, and the probable
value, if any, of additional or substitute procedural safeguards; and (3) the
Government's interest, including the function involved and the fiscal and
administrative burdens that the additional or substitute procedural requirement
would entail."  Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020)
(citing Mathews, 424 U.S. at 335) (internal quotation marks omitted).

14

87 (venue owners and promoters); ¶¶ 69, 90 (Database inclusion).
Further, both claims challenge the deprivation of plaintiff's good
name and reputation and assert plaintiff's right to be heard.  Id.
¶¶ 64, 86 (good name and reputation); ¶¶ 69, 86 (opportunity to be
heard).

Regardless of plaintiff's efforts to recast his claims, both
the first and third causes of action must be predicated on viable
claims of reputational harm, which requires application of the
stigma plus analysis.  To the extent that plaintiff's claims are
predicated on his inclusion in the Database, he cannot claim
reputational harm.   This   is   because   plaintiff   himself   was
responsible for disclosing, albeit inaccurately, in his initial
complaint and FAC that he was included in the Database.  ECF No.
1 ¶ 27; ECF No. 23 ¶ 43.  The City's subsequent disclosure that
plaintiff was added to the Database on September 13, 2018 was
driven by the City's need to rebut plaintiff's claim that Detective
Solomon added him to the Database in 2017.  See ECF No. 36 at 10
(citing ECF No. 37-2).  It is not without considerable irony that,
had plaintiff not chosen to assert that he was included in the
Database  and  to  make  additional  claims  therefrom,  no  such
disclosure  of  his  presence  on  the  Database  ever  would  have
occurred.[13]

---

[13] We note that defendants included in their submissions in connection
with their partial motion to dismiss testimony from NYPD Chief of Detectives
Dermot Shea regarding the Criminal Group Database ("Shea Testimony").  ECF No.

Even if plaintiff had not "outed" himself, thereby eliminating the threshold prong of reputational harm, the allegations relevant to the "plus" prong are also deficient. As relevant to the "plus" prong of the stigma plus analysis, plaintiff does not allege any actual personal harm resulting from his eventual inclusion in the Database. Rather, plaintiff's allegations of harm are made on "information and belief," ECF No. 81-1 ¶¶ 59-60, and state in a conclusory manner that individuals on the Database are "subjected to different treatment by law enforcement officers . . . including longer seizures and post-arrest, pre-arraignment detentions, heightened risk of unlawful force being used . . . and heightened bail requirements"; see also ECF No. 81-1 ¶¶ 92 (alleging that plaintiff was deprived of the "right to be free from deprivation of liberty").[14]  Plaintiff, therefore, has not sufficiently alleged that defendants caused

_____

37-3.  The Shea Testimony is a four-and-a-half page, single-spaced statement of remarks from Detective Shea, which he delivered to the New York City Council Committee on Public Safety on June 13, 2018.  While the Shea Testimony is not properly before the Court at this stage in the proceedings, we nevertheless note that the Shea Testimony makes clear that the Database is not subject to public disclosure — it is accessible only to NYPD personnel.  ECF No. 37-3 at 4.  Plaintiff has not alleged otherwise.

[14] We recognize that while there are limits on the Court's ability to rely on the Shea Testimony, nonetheless the Court and plaintiff have been aware of that testimony for well over a year and a half.  Despite that awareness, plaintiff's PSAC does not challenge the Shea Testimony and in fact includes "information and belief" allegations that are directly contradicted by the Shea Testimony.  Specifically, Shea explained that Database inclusion does not provide grounds for a stop, arrest, or any other enforcement action, nor does entry on the Database appear in an individual's criminal history or rap sheet when being fingerprinted.  ECF No. 37-3 at 4.  Further, the Database is not shared with the New York City Housing Authority or employers conducting background checks.  Id.

either a stigma or a "plus" in connection with his Database inclusion. Cf. Valamonte, 18 F.3d at 1001 ("plus" alleged where database inclusion caused "a specific deprivation of [plaintiff's] opportunity to seek employment caused by a statutory impediment established by the state").[15]

Finally, though plaintiff attempts to sequester his claim regarding defendants' statements to venue owners and promoters into the Liberty Interest Claim, because the PSAC includes these allegations in the Procedural Due Process Claim, which the City has moved to dismiss as duplicative and deficient, we address — and dismiss — them here. Defendants' alleged statements to venue owners and concert promoters about plaintiff's gang affiliation could give rise to a poor reputation, thereby satisfying the first prong of the stigma plus test. Nevertheless, plaintiff still has not sufficiently alleged the "plus": allegations regarding the cancellation of concerts do not suffice to state a claim under the stigma plus doctrine. Ahearn v. Brachowicz, No. 13 Civ. 8007, 2014 WL 3408389, at *8 (S.D.N.Y. July 10, 2014) (citation omitted) (finding that no "plus" was alleged where plaintiff was not terminated from government employment or deprived of "some other legal right or status"); see also Neu, 869 F.2d at 669-70

---

[15] Whether there is a standalone procedural due process claim for inclusion in the Database, when plaintiff's knowledge is the result of his own actions in this case, and without any evidence of use or impact, is a question that we leave for another day.

(defamatory statements that led to inability to engage in auto repair contract business insufficient to allege "stigma plus"). Without having alleged the "plus," plaintiff has failed to allege a protectible liberty interest in his Procedural Due Process Claim.[16]

Because plaintiff's Procedural Due Process Claim is futile on the ground that plaintiff failed to allege a protectible liberty interest,[17] leave to amend to add the Procedural Due Process Claim is denied.[18]

---

[16] Even if plaintiff had alleged a protectible liberty interest, plaintiff's scheduled performances were within a day or so of the NYPD defendants' alleged statements to venue owners and promoters. This short timeframe would not provide sufficient time to conduct a hearing, even assuming that the balancing of interests of public safety versus the plaintiff's reputation would warrant one. In this regard, the Court has expressed its position in the past that it will not prevent "the police internally [from] performing law enforcement functions." Tr. of Oral Arg., May 31, 2018, ECF No. 4 at 9:11-12; see also 14:19-20. It follows that this Court would be highly unlikely to find that plaintiff was entitled to a hearing in advance of NYPD officers' urgent communications with promoters and venue owners made in furtherance of law enforcement.

[17] The Court also notes the delay in this proposed amendment, notwithstanding that this claim was apparent from the outset of the case.

[18] In the PSAC, plaintiff seeks to add a number of allegations to his Liberty Interest Claim. These proposed additions do not change the nature of his claim but do provide additional detail already set forth in the Factual Allegations, including that defendants: stated to Parascandola of the New York Daily News that plaintiff was a Dub City member, ¶ 65; told the media about his prior arrests, ¶ 66; stated to promoters and venue owners that he was a gang member, ¶ 67; and activated him on the Database, ¶ 69. In principle, the Court has no objection to these amendments.

That said, the Court's conclusion that there is no interference with a liberty interest upon which to perform a procedural due process analysis obviously calls into question the viability of the Liberty Interest Claim — which is not the subject of the motion to amend — for identical reasons. As a matter of intellectual consistency, it appears to the Court that — having found that the Procedural Due Process Claim fails to state a claim on which relief can be granted — the Liberty Interest Claim also should be dismissed. If there is a flaw in this reasoning, the Court invites plaintiff to address it.

### C. Fourth Cause of Action: Equal Protection Claim

The PSAC adds a fourth cause of action against the City of New York alleging an equal protection violation arising from plaintiff's inclusion in the Database ("Equal Protection Claim"). ECF No. 81-1 ¶¶ 94-101.  Defendants oppose the inclusion of this amendment, arguing that it is futile.

This amendment is denied because Court already dismissed plaintiff's Monell claims alleged in the FAC, one of which challenged plaintiff's inclusion in the Database on the basis that the Database is comprised predominantly of non-white individuals. ECF No. 51 at 7-8; see also ECF No. 23 ¶¶ 95, 97 (Monell claim alleging that the City "maintain[s] a policy, custom, or practice of maintaining a 'gang database' in violation of the First and Fourteenth Amendments" which consists "almost entirely of people who are non-white"); see also id. ¶ 24 ("NYPD's 'gang database' is comprised almost entirely of non-white individuals, including plaintiff").  Plaintiff cannot bring a claim that was already dismissed.[19]

---

[19] Even if the Equal Protection Claim were not already dismissed, it would be futile.  "To establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following: (1) that the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004) (citation omitted).  "[I]t is well established that 'proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'"  Drew, 2020 WL 3869732, at *3 (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977)).

## IV.  Conclusion

For the foregoing reasons, plaintiff's motion for leave to file an amended complaint is GRANTED in part and DENIED in part. The Court permits amendment to replace John Doe defendants throughout the complaint and denies the additions of the Procedural Due Process and Equal Protection Claims.  The Court does not address the PSAC's amendments to the eleventh cause of action in light of plaintiff's withdrawal of this cause of action during oral argument.  To the extent not addressed in the preceding Memorandum and Order, plaintiff's proposed amendments are permitted.

Plaintiff is directed to file his Second Amended Complaint consistent with this Memorandum and Order within seven days of its issuance.  The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 69.

**SO ORDERED.**

Dated:    New York, New York
          February 19, 2021

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

Here, the PSAC alleges that the Database "is comprised almost entirely of non-white individuals," and that "white nationalist organizations who have a presence . . . are not included."  ECF No. 81-1 ¶¶ 97-98.  Without more, the PSAC does not allege proof of "racially discriminatory intent or purpose" sufficient to sustain a violation of the Equal Protection Clause.  See Drew, 2020 WL 3869732, at *3 (dismissing Equal Protection claim where plaintiff failed to offer anything more than conclusory allegations).