UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X

GIOVANNI RODRIGUEZ (a/k/a King Karrot),

                         Plaintiff,

- against -

THE CITY OF NEW YORK, a municipal entity; New York City Police Department Sergeant JUAN VENTURA; New York City Police Detective SOLOMON (Shield No. 02307); New York City Police Department Captain IGOR PINKHASOV; New York City Department Detective JEFFREY SCALF (Shield No. 4677); New York City Police Department Sergeant LEO NUGENT (Shield No. 2386); New York City Police Department Detective SEAN SMITH (Shield No. 2386); New York City Police Department Detective JASON CHANDLER; New York City Police Detective HARRY MENDEZ; New York City Police Department Officer EDWIN BAEZ; and "JOHN and/or JANE DOES" 1, 2, 3, etc. (whose identity are unknown but who are known to be personnel of the New York City Police Department), all of whom are sued in their individual capacities,

                         Defendants.
------------------------------------------------------------------------- X

**SECOND AMENDED COMPLAINT**

**18-cv-4805**

**JURY TRIAL DEMANDED**

Plaintiff Giovanni Rodriguez, by his attorney the LAW OFFICE OF KEITH SZCZEPANSKI, as and for his second amended complaint against The City of New York, Commissioner O'Neil, Sergeant Ventura, Detective Solomon, Captain Pinkhasov, Detective Scalf, Sergeant Nugent, Detective Smith, Detective Chandler, Detective Mendez, Officer Baez, and John and/or Jane Doe New York City Police Department officers, alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for declaratory and injunctive relief and damages to redress the deprivation of rights secured to plaintiff by applicable law, including the First, Fourth, and Fourteenth Amendments to the United States Constitution and applicable state and city law.

Plaintiff, an artist who performs under the stage name "King Karrot," brings this action seeking damages and injunctive relief, as described more fully below.

2. Plaintiff seeks relief for the unconstitutional and retaliatory actions taken against him, including actions taken by defendants which unlawfully prevented him from performing at two concerts.

3. Plaintiff has suffered damages and seeks relief, including the ability to perform at future concerts without NYPD interference, removal from the NYPD's gang database, injunctive relief against continued retaliation and violation of law, and damages including future lost earnings, compensatory damages for pain and suffering, emotional distress and mental anguish, injury to his personal and professional name, career and reputation, costs, reasonable attorney's fees, and punitive damages.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action arises under the laws of the United States and seeks to recover damages and secure relief under the laws providing for the protection of civil rights.

5. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiff's claims took place.

## PARTIES

6. Plaintiff is a citizen of the United States and a resident of Bronx County and the State of New York. Plaintiff is an artist who performs under the stage name "King Karrot."

7. Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

8.  The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

9.  Defendants NYPD Sergeant VENTURA, NYPD Detective BERNARD SOLOMON (Shield No. 02307), NYPD Captain PINKHASOV, NYPD Detective JEFFREY SCALF (Shield No. 4677), NYPD Sergeant LEO NUGENT (Shield No. 00046), NYPD Detective SEAN SMITH (Shield No. 2386), NYPD Detective CHANDLER, NYPD Detective Mendez, NYPD Police Officer EDWIN BAEZ, and JOHN and/or JANE DOES 1, 2, 3, etc. ("DOES") are NYPD Police Officers who, *inter alia*, unlawfully and without justification labeled plaintiff a "gang member," placed him in the NYPD's "gang database," and prevented him from performing in at least two concerts in Manhattan and the Bronx.

10. Upon information and belief, defendants VENTURA, SOLOMON, PINKHASOV, SCALF, NUGENT, SMITH, BAEZ, CHANDLER, and DOES are still NYPD Police Officers. Upon information and belief, defendant MENDEZ is retired from the NYPD.

11. At all times relevant herein, defendants VENTURA, SOLOMON, PINKHASOV, SCALF, NUGENT, SMITH, CHANDLER, MENDEZ, BAEZ, and DOES have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

12. At all times relevant herein, defendants VENTURA, SOLOMON, PINKHASOV, SCALF, NUGENT, SMITH, CHANDLER, MENDEZ, BAEZ, and DOES violated clearly

established rights and standards under the First, Fourth, and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in their circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

13. On June 25, 2018, plaintiff filed a Verified Petition in New York State Supreme Court requesting an order, pursuant to New York General Municipal Law § 50-e(5) deeming the claims in his Notice of Claim timely served nunc pro tunc and/or for leave to serve a late notice of claim

14. Plaintiff served a Notice of Claim upon the City of New York by personal delivery on June 25, 2018.

15. On July 18, 2018, the Honorable Mitchell J. Danziger issued an order granting plaintiff's request to serve a late Notice of Claim on the City for the injuries described herein.

16. A Notice of Entry as to the Court's July 18, 2018 decision was served upon the City of New York on July 20, 2018.

17. Plaintiff attended an examination pursuant to New York General Municipal Law § 50-h on September 6, 2018.

18. More than thirty days have elapsed since plaintiff served his Notice of Claim and he has not received offer of adjustment or payment of his claim.

## FACTUAL ALLEGATIONS

19. Plaintiff is rapper who performs under the stage name King Karrot.

20. Prior to May 15, 2017, plaintiff, under the stage name King Karrot, had performed in approximately five concerts in New York City.

21. Upon information and belief, prior to May 15, 2017, plaintiff was not identified as a "gang member" by the NYPD and he did not appear in the NYPD's "gang database."

22. Upon information and belief, the NYPD, under the leadership and supervision of Commissioner O'Neil, maintain a "gang database" consisting of individuals the NYPD allege are "gang members" and/or have "gang affiliations."

23. Upon information and belief, the NYPD's "gang database" is comprised almost entirely of non-white individuals, including plaintiff.

24. Upon information and belief, once an individual is entered into the "gang database" they cannot be removed.

25. Upon information and belief, plaintiff and hundreds, if not thousands, of other individuals have been entered into the "gang database" without committing an unlawful offense related to gang activity.

26. Upon information and belief, the criteria to be included in the gang database consists of wear gang colors, which according to the NYPD include black, red, green, brown, khaki, blue, grey, purple, orange, gold/yellow, white, green, and lime green; and using social media sites including snapchat, Facebook, Instagram, twitter, and YouTube. Some alleged gang members may have "legitimate employment" including, jobs in security, local courts, the medical field, or in the military.

27. On May 15, 2017, plaintiff was visiting family near Morris Avenue and Burnside in the Bronx.

28. After plaintiff exited a deli on Walton Avenue where he had stopped for a snack, he heard gunshots and started running down the street.

29. As plaintiff ran down the street, he was shot in the back. Upon information and belief, plaintiff was not the intended target of the shooter and he had been hit by a stray bullet.

30. Upon information and belief, the bullet that struck plaintiff was intended for two individuals who were standing on Walton Avenue, near the deli plaintiff exited.

31. Upon information and belief, the two individuals who were shot were allegedly members of the gang "Dub City."

32. Plaintiff was taken to a Bronx hospital where he received treatment for his injuries.

33. At the hospital, members of the NYPD, including defendant Solomon, Baez, and Smith, unlawfully seized plaintiff's property, including his clothes and cell phone.

34. Plaintiff's property was never returned to him.

35. Defendants Solomon, Baez, and Smith further conducted an unlawful seizure of plaintiff, by questioning him while he was in his hospital bed.

36. Defendant officers, including defendants Solomon and Smith, unlawfully took a DNA swab sample from plaintiff's mouth, while he was in his hospital bed and without being suspected of any unlawful conduct, and questioned him about the shooting.

37. Plaintiff is not a part of, nor does he have any affiliation with "Dub City" or any other gang or crew.

38. Upon information and belief, members of the NYPD falsely told members of the media, including Rocco Parascandola of the New York Daily News, that plaintiff was a member of Dub City.

39. Upon information and belief, members of the NYPD also told members of the media, including Mr. Parascandola, that plaintiff was arrested twice while he was a minor, in violation of N.Y. Fam. Ct. Act § 381.1 et seq.

40. On or about May 26, 2017, plaintiff, his mother, and his attorney met with defendant Solomon, from the NYPD's 46th Precinct regarding the Walton Avenue shooting.

41. At the meeting, defendant Solomon stated that he knew that plaintiff was not a "gang member," but sought information about the individual who shot plaintiff on May 15.

42. Plaintiff stated that he did not see the person who shot him and could not provide the officer with any information about the shooting.

43. Upon information and belief, in retaliation for not providing information about the individual who shot him, defendant Solomon identified plaintiff as a "gang member," despite knowing that he is not a gang member, and entered his information into the NYPD "gang database."

44. Upon information and belief, defendants Scalf, Nugent, and DOES also entered plaintiff's information into the NYPD "gang database" without evidence that plaintiff engaged in unlawful conduct or gang related activities, in violation of his due process rights. This allegation is based in part upon statements made by Robert Corbett from the NYPD's legal bureau at plaintiff's May 31, 2018 hearing for a temporary restraining order, ". . . [Plaintiff] has been known to the NYPD, either now or in the past, as a gang affiliate."

45. Upon information and belief, the NYPD has a policy and practice of designating a group of officers who report potential safety concerns to concert venues, concert promotors, and/or club owners.

46. Upon information and belief, the NYPD has a policy and practice of disproportionately policing so-called rap and/or hip-hop concerts because of the content of the music and/or because the performers are overwhelmingly non-white.

47. Upon information and belief, the NYPD has a policy and practice of disproportionally policing concerts where they allege the performer is a "gang member" or has

"gang affiliation" without any specific evidence of the artists engaging in unlawful conduct or gang related activity at the performance.

48.     On or about September 19, 2017, plaintiff was scheduled to perform at a Sirius XM Satellite Radio showcase concert for up and coming artists at SOB's in Manhattan.

49.     On the day of the performance, plaintiff's manager received phone calls from the concert's promotor and Larry Gold, the owner of SOB's, stating, in sum and substance, defendant NYPD officers, including, upon information and belief defendants Chandler and Mendez, had communicated to them that plaintiff was a "gang member," that there was a high likelihood of a shooting occurring at SOB's if plaintiff was allowed to perform, and that the NYPD would shut down the concert if plaintiff was allowed to perform.

50.     Based on the false statements made by defendant NYPD officers, including, upon information and belief defendants Chandler and Mendez, plaintiff was prohibited from performing at SOB's on September 19, 2017.

51.     On or about October 13, 2017, plaintiff was scheduled to perform at Parrilla Latina in the Bronx.

52.     On the day of the Parrilla Latina performance, plaintiff's manager received a phone call from a Parrilla Latina employee stating that defendant NYPD officers, including, upon information and belief defendant Ventura, had informed them that plaintiff was a "gang member" and that the NYPD would "shut down" Parrilla Latina if plaintiff was allowed to perform.

53.     Based on the false statements made by defendant NYPD officers, including, upon information and belief defendant Ventura, plaintiff was prohibited from performing at Parrilla Latina on October 13, 2017.

8

54. Upon information and belief, members of the NYPD will attempt to prevent plaintiff from performing at future concerts.

55. Upon information and belief, if plaintiff is prevented from performing at future concerts, his career and reputation will be further damaged, to a point where he may not be able to book concerts because promotors, booking agents, and club owners will falsely identify him as a "gang member."

56. Plaintiff has spent expended approximately $3,000 in costs for the canceled performances, including expenditures for promotions, clothes, and stylings.

57. Upon information and belief, on September 13, 2018, defendants Scalf, Nugent, and Pinkhasov activated plaintiff into the NYPD's Criminal Group List in violation of his due process and First Amendment rights. The alleged basis of plaintiff's activation into the Criminal Group List was his alleged social media presence with other purported members of "Dub City" in which they allegedly displayed hand signs that are allegedly indicative of gang affiliation.

58. Upon information and belief, plaintiff does not have a meaningful opportunity to challenge his inclusion on the NYPD's Criminal Group List or other "gang databases" the NYPD operate.

59. Upon information and belief, individuals listed in the NYPD's Criminal Group List are subjected to different treatment by law enforcement officers, including members of the NYPD, than individuals not listed on the List, including longer seizures and post-arrest, pre-arraignment detentions, heightened risk of unlawful force being used during seizures and detention, and heightened bail requirements. This has the potential to result in difficulties securing/maintaining employment, housing, and obtaining certain licenses processed by the City and/or State.

60. As a result of his interactions with defendants and other members of the NYPD, plaintiff avoids leaving his home in order to minimize his potential for interacting with the NYPD and other law enforcement entities.

61. To date, plaintiff has never been arrested on or otherwise accused of criminal activity associated with a "gang" or "gang related activity."

62. As a result of the individual defendants' conduct, plaintiff has suffered damage and seeks relief including the ability to perform at future concerts,, removal from the NYPD's gang database, injunctive relief against continued retaliation and violation of law, and damages including future lost earnings, compensatory damages for pain and suffering, emotional distress and mental anguish, injury to his personal and professional name, career and reputation, costs, reasonable attorney's fees, and punitive damages.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
**42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process**
(Against Defendants Chandler, Mendez, Ventura, and Does)

63. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

64. Defendants violated plaintiff's right to substantive due process under the Fourteenth Amendment by falsely accusing him of being a "gang member" and later using that false classification as justification to prevent him from performing at concert's in which he was booked, including on September 19, 2017 at SOB's and October 19, 2017 at Parrilla Latina.

65. Defendants falsely stated to, *inter alia,* Rocco Parascandola of the New York Daily News that plaintiff was "with Dub City", upon information and belief, a Bronx gang or crew.

66. Defendants also made statements about plaintiff's prior arrests, both of which occurred when he was a minor and should have been sealed pursuant to N.Y. Fam. Ct. Act § 381.1 et seq.

67. Defendants, including defendants Chandler, Mendez, and Ventura, falsely stated to, *inter alia*, the promotors of and venue owners of plaintiff's September 19, 2017 and October 13, 2017 concerts that he was a gang member, resulting in his performances being canceled.

68. Defendants' acts were outrageously arbitrary, oppressive, and conscience-shocking as to constitute a gross abuse of governmental authority.

69. In committing the acts complained of herein, defendants acted in bad faith and under color of law.

70. As a direct and proximate result of being denied his constitutional right to be free from the deprivation of liberty without due process, plaintiff has suffered injuries and damages.

71. The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – First Amendment**
(Against defendants Chandler, Mendez, Ventura, Pinkhasov, Scalf, Nugent, and Does)

72. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

73. Plaintiff's freedom of expressive association, speech, and assembly was violated by defendants, including defendants Chandler, Mendez, and Ventura, by falsely labelling him as a "gang member" and preventing him from performing on September 19 and October 13, 2017.

74. Defendants' actions prevented plaintiff from making speech, through his music, which is protected under the First Amendment of the United States Constitution.

75. Defendants' actions prevented an assembly of individuals who sought to convene in order to hear and see plaintiff perform his music live and in public.

76. Defendants retaliated against plaintiff because he did not provide them with information about the individual who shot him on May 15, 2017.

77. Defendants including, Pinkhasov, Scalf, and Nugent, inclusion of plaintiff into the NYPD's "gang database" and or Criminal Group List because of his alleged activity on social media with other individuals whom the NYPD also allege are gang members violate his freedom of association, assembly, and speech.

78. Defendants' inclusion of plaintiff into the NYPD's "gang database" and/or Criminal Group List chills his ability to associate with individuals and engage in activities such as speech and/or assembly because he has no way of knowing who else is listed on the NYPD's "gang database" and/or Criminal Group List. According to the Criminal Group List activation report, plaintiff was activated onto this list, solely because he was seen on social media sites with individuals whom the NYPD allege are gang members.

79. Defendants were motivated by plaintiff's acts and speech, both actual and perceived.

80. In their actions, defendants violated plaintiff's rights under the First Amendment of the United States Constitution

81. In committing the acts and omissions complained of herein, defendants acted in bad faith and under color of law.

82. As a direct and proximate result of being denied his constitutional rights under the First Amendment, plaintiff has suffered injuries and damages.

83. The unlawful conduct of the individual defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 – Individual Defendant Officers' Violations of Plaintiff's Fourth and Fourteenth Amendment Rights
(Against Defendants Solomon, Baez, Smith, and Does)

84. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth.

85. In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive plaintiff of his right to be free from unreasonable search and seizure, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

86. Defendant officers, including Solomon and Smith unlawfully searched plaintiff, removing a DNA swab sample from plaintiff as he received medical treatment on May 15, 2017.

87. Defendant officers, including Solomon, Baez, and Smith, unlawfully seized plaintiff's property as he received medical treatment on May 15, 2017, including his clothes and iPhone.

88. Defendant officers, including Solomon, Baez, and Smith, also unlawfully seized plaintiff by questioning him while he was in his hospital bed.

89. In committing the acts and omissions complained of herein, defendants breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

90. As a direct and proximate result of defendants' deprivation of plaintiff's constitutional rights, plaintiff suffered the injuries and damages set forth above.

91. The unlawful conduct of defendant officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## FOURTH CAUSE OF ACTION
**Defamation of Character**
(Against Defendant City of New York)

92. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

93. Defendants falsely stated to, *inter alia,* Rocco Parascandola of the New York Daily News that plaintiff was "with Dub City", upon information and belief, a Bronx gang or crew.

94. Defendants also made statements about plaintiff's prior arrests, both of which occurred when he was a minor and should have been sealed pursuant to N.Y. Fam. Ct. Act § 381.1 et seq.

95. Larry Gold, the owner of SOB's stated, in sum and substance, defendants told him that plaintiff was a "gang member", stated that if plaintiff was allowed to perform, gang related violence would likely occur, and that they would "shut down" SOB's if plaintiff was allowed to perform on September 19, 2017.

96. Defendant officers also threatened to "shut down" Parrilla Latina if plaintiff was allowed to perform on October 13, 2017.

97. Defendants knowingly made false statements to media outlets, concert promoters, and concert venue owners falsely accusing plaintiff as being a gang member.

98. The actions of the individual defendants damaged the reputation of plaintiff.

99. The actions of defendants were performed with malice and disregard for the truth.

100. As a result, plaintiff suffered defamation of character.

## FIFTH CAUSE OF ACTION
**Slander *Per Se***
(Against Defendant City of New York)

101. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

102. Defendants authorized the release of false statements about plaintiff to the news media, accusing him a being "with Dub City".

103. Defendants knowingly made false statements to members of the NYPD, members of the local media, concert promotors, and music venue owners, accusing plaintiff of being a "gang member."

104. Defendants also authorized the release of information about plaintiff's previous arrests, which occurred when he was a minor and should have been sealed pursuant to N.Y. Fam. Ct. Act § 381.1 et seq.

105. Larry Gold, the owner of SOB's stated, in sum and substance, defendants told him that plaintiff was a "gang member", stated that if plaintiff was allowed to perform, gang related violence would likely occur, and that they would "shut down" SOB's if plaintiff was allowed to perform on September 19, 2017.

106. Defendant officers also threatened to "shut down" Parrilla Latina if plaintiff was allowed to perform on October 13, 2017.

107. Defendants knowingly made false statements to media outlets, concert promoters, and concert venue owners falsely accusing plaintiff as being a gang member.

108. The actions of the individual defendants damaged the reputation of plaintiff.

109. The actions of individual defendants were performed with malice and disregard for the truth.

110. As a result, plaintiff suffered harm to his character.

## SIXTH CAUSE OF ACTION
### Bias-Based Profiling by Law Enforcement

### in Violation of New York City Human Rights Law
(Against Defendant City of New York)

111. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

112. Plaintiff is Latino and lives in a section of the Bronx that has been designated as a "high crime area."

113. As noted above, plaintiff was falsely accused of being a member of a gang and, upon information and belief, is unlawfully included in the NYPD's gang database.

114. Upon information and belief, the NYPD's gang database includes approximately 42,334 people, with the overwhelming majority of these individuals identified as non-white.

115. Defendants have unlawfully profiled plaintiff on the basis of his race and color in violation of the New York City Human Rights Law, New York City Administrative Code, §8-101 et seq., and in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the New York State Constitution.

116. Section 14-151 of the New York City Human Rights Law prohibits bias-based profiling by law enforcement officers relying upon actual or perceived race, color, and/or housing status.

117. Plaintiff has been profiled by members of the NYPD, and added to the NYPD gang database, because of his race, color, and/or housing status.

118. The NYPD included plaintiff in their gang database not based upon his behavior or other information or circumstances, but because of his race, color, and/or housing status.

119. The NYPD's bias-based profiling has resulted in a gang database that does not serve a compelling governmental interest and is not narrowly tailored to achieve that compelling governmental interest.

120. The NYPD and defendant officers intentionally engaged in bias-based profiling of plaintiff and have failed to prove that the inclusion of plaintiff in the NYPD's "gang database" was justified by factors unrelated to unlawful discrimination.

121. The NYPD's policy and practice of including plaintiff, and similarly situated individuals, in their "gang database" has a disparate impact on non-white residents of alleged "high-crime" areas of the City.

122. The NYPD has failed to establish that their creation and continued reliance on a "gang database" bears a significant relationship in advancing a significant law enforcement objective and does not contribute to the disparate impact on plaintiff.

123. The individual defendants have aided and abetted such discrimination in violation of the New York City Human Rights Law, New York City Administrative Code, §8-101 et seq.

124. As a result of defendants' acts, plaintiff suffered the injuries and damages set forth above, and is entitled to damages and other relief under applicable law.

**SEVENTH CAUSE OF ACTION**
**Tortious Interference with Contract**
(Against Defendant City of New York)

125. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

126. Plaintiff was contracted to perform at SOB's on September 19, 2017 and Parrilla Latina on October 13, 2017.

127. The individual defendants were aware of plaintiff's contractual relationship with SOB's and Parrilla Latina.

17

128. In committing the foregoing acts and omissions, defendants intentionally and/or recklessly interfered with and/or caused the breach of plaintiff's employment contract with SOB's and Parrilla Latina.

129. As a result of defendants' acts and omissions, plaintiff suffered the injuries and damages set forth above.

## EIGHTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
(Against Defendant City of New York)

130. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

131. Defendants through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused plaintiff to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

132. Defendants committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

## NINTH CAUSE OF ACTION
**Negligence**
(Against Defendant City of New York)

133. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

134. Defendants owed plaintiff a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

135. Defendants through the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

136. All of these acts were performed without any negligence on the part of plaintiff and were the proximate cause of the injuries to plaintiff.

## TENTH CAUSE OF ACTION
**Negligent Hiring, Training, and Supervision Under State Law**
(Against Defendant City of New York)

137. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

138. The City is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants, and/or employees employed and/or the NYPD with regard to their aforementioned duties.

## ELEVENTH CAUSE OF ACTION
*Respondeat Superior*
(Against Defendant City of New York)

139. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

140. At all relevant times, defendants were employees of the City and were acting within the scope of their employment.

141. The City is therefore vicariously liable under the doctrine of r*espondeat superior* for the actions of defendants set forth herein.

## DEMAND FOR RELIEF

WHEREFORE, plaintiff respectfully requests the Court to award him the following relief:

(a) Judgment declaring that defendants' acts complained of herein violated plaintiff's Due Process and First Amendment rights under the Fourteenth Amendment to the United States Constitution;

(b) An Order preventing defendants from continuing to contact concert promotors or club owners and state that plaintiff is a member of a "gang" or on the NYPD's "Gang Database" and/or in any other way preventing and/or interfering with plaintiff's performance schedule;

(c) An Order declaring that plaintiff should be removed from the NYPD's "Gang Database";

(d) An Order enjoining and restraining defendants from continued violation of law;

(e) Appropriate compensation for future lost earnings;

(f) Compensatory damages to compensate plaintiff for damage to name, profession, career and reputation, pain and suffering, emotional distress and mental anguish, embarrassment, indignity and dislocation;

(g) Punitive damages against the individual defendants;

(h) Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable law, together with costs and disbursements of this action;

(i) Pre- and post-judgment interest to the extent allowable by law; and

**(j)** Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: Sunnyside, New York
February 25, 2021

LAW OFFICE OF KEITH SZCZEPANSKI

By:_____
    Keith Szczepanski
*Attorney for Plaintiff*
38-17 52nd Street, 3rd Floor
Sunnyside, New York 11104
(917) 586-6493