UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

GIOVANNI RODRIGUEZ (a/k/a King Karrot),

              Plaintiff,           **MEMORANDUM AND ORDER**

     - against -           18 Civ. 4805 (NRB)

THE CITY OF NEW YORK et al.,

              Defendants.

---------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Giovanni Rodriguez, a rap artist who performs under the stage name "King Karrot," brings this action against the City of New York ("City"), New York City Police Department ("NYPD") Sergeant Juan Ventura, NYPD Detective Bernard Solomon, NYPD Captain Igor Pinkhasov, NYPD Detective Jeffrey Scalf, NYPD Sergeant Leo Nugent, NYPD Detective Sean Smith, NYPD Detective Jason Chandler, NYPD Detective Harry Mendez, NYPD Officer Edwin Baez, and John and/or Jane Doe NYPD officers (collectively, "defendants").  This case began in May of 2018, when plaintiff filed his initial complaint, along with an order to show cause seeking a temporary restraining order to allow him to perform at a concert without interference from defendants.  In his complaint, plaintiff alleged, *inter alia*, that he was improperly included in the NYPD's Criminal Group List and that the NYPD informed venues

that he was a gang member with the effect of preventing him from performing.  It has since become clear that plaintiff was not included in the Criminal Group List at the time that his complaint was filed.  Nor has plaintiff been prevented from performing at any concerts since he filed his complaint in 2018.  Nevertheless, plaintiff has repeatedly sought to amend his complaint to add numerous additional claims against an expanding cast of City employees, with limited success.

Presently before the Court is defendants' motion to dismiss plaintiff's latest effort, the Second Amended Complaint ("SAC"), in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).  Defendants argue that a release plaintiff executed as part of a settlement in a prior case against the City and its employees releases all of plaintiff's claims, save his claim alleging violations of his First Amendment rights, but that plaintiff's purported First Amendment claim fails to state a claim.  ECF No. 115.  In response, plaintiff cross-moved to reform the release or, in the alternative, to vacate the judgment in the prior lawsuit under Federal Rule of Civil Procedure 60(b)(6).[1]  ECF No.

---

[1]    Plaintiff requested oral argument on the motions.  ECF No. 121. The Court has concluded, based on the parties' submissions and the Court's knowledge of the history of the case, that oral argument is unnecessary as the issues before the Court are purely legal.

121.  For the following reasons, defendants' motion is granted and plaintiff's cross-motion is denied.

I. **Background**

    **A.  The Allegations in Plaintiff's Second Amended Complaint**[2]

    Plaintiff alleges that on May 15, 2017, he was exiting a deli in the Bronx when he was shot by an unknown shooter who had intended to shoot two members of the gang "Dub City," of which plaintiff maintains he is not a member.  SAC ¶¶ 27-31.  Plaintiff thereafter was taken to a Bronx hospital where members of the NYPD, including Detective Bernard Solomon, Officer Edwin Baez, and Detective Sean Smith questioned him about the shooting and took his clothes and cell phone.  Id. ¶¶ 32-35.  Detectives Solomon and Smith also took a DNA swab sample from plaintiff's mouth.  Id. ¶ 36.  On May 26, 2017, plaintiff, along with his mother and his attorney, met with Detective Solomon to discuss the May 15 shooting.  Id. ¶ 40.

    Plaintiff further alleges that in retaliation for his inability to identify the individual who shot him on May 15, 2017 Detective Solomon initiated a process whereby plaintiff's name was added to a so-called "gang database," notwithstanding Detective Solomon's purported knowledge that plaintiff was not in fact a

---

[2]    The following facts are drawn from the operative complaint, ECF No. 92. For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences in plaintiff's favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

member of "Dub City" or any other gang.  Id. ¶ 43.  Thereafter, members of the NYPD are alleged to have made statements to members of the media about plaintiff's purported gang affiliation.  Id. ¶ 38.  Members of the NYPD are also alleged to have made statements to venue owners and concert promoters regarding plaintiff's gang affiliation that resulted in plaintiff being removed from two performance lineups, thereby violating plaintiff's constitutional rights and, *inter alia*, depriving him of opportunities for professional advancement.  Id. ¶¶ 48-55.  Detective Scalf, Sergeant Nugent, and Does also allegedly entered plaintiff's information into the "gang database" without evidence that plaintiff had engaged in unlawful conduct or gang related activities.  Id. ¶ 44.  Plaintiff further alleges that on September 13, 2018, Detective Scalf, Sergeant Nugent, and Captain Pinkhasov "activated" plaintiff into the NYPD's Criminal Group List.  Id. ¶ 57.

**B. The Release**[3]

In 2015, plaintiff brought a lawsuit against the City of New York and two New York City police officers in which he alleged he was unlawfully detained by the NYPD (the "2015 Lawsuit").  Guzman v. City of New York, No. 15 Civ. 08102 (ER) (S.D.N.Y.).  Although

---

[3]    The Court takes judicial notice of the Release and settlement documents that were publicly filed as matters of public record for their content and legal effect.  See Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).

plaintiff brought that suit under another name (Giovanni Guzman), it is undisputed that the plaintiff in the 2015 lawsuit is the same individual as the plaintiff in this case, and that he was represented in that suit by his current counsel in this case.   ECF No. 122 ¶ 2.   On January 12, 2018 — less than five months before plaintiff filed the instant case — plaintiff settled the 2015 Lawsuit with the City.[4]   Stipulation and Order of Dismissal, Guzman, (S.D.N.Y. Jun. 25, 2018), ECF No. 39-1; ECF No. 114-2 at 9.   As part of this settlement, plaintiff received $30,000. Stipulation and Order of Dismissal at 8, Guzman, (S.D.N.Y. Jun. 25, 2018), ECF No. 39-1.   In consideration, plaintiff executed a document entitled "General Release," which in part provided that plaintiff released the City of New York, the NYPD officers he sued, "their successors or assigns; and all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of the Corporation Counsel" from "any and all liability, claims, or rights of action alleging a violation of [his] civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release . . ." (the "2018 Release" or the "Release").   Id.

---

[4]    While the release plaintiff signed is dated January 12, 2017, the contemporaneous documents signed with the release and the cover letter transmitting it are all dated in January 2018.  ECF Nos. 114-1—114-4.  Neither party contests that the release was signed on January 12, 2018.

5

Plaintiff was represented by his current counsel in negotiating the settlement of that case, and his counsel signed the Release. ECF No. 122 ¶ 2.   The settlement, including the Release, was publicly filed.   Stipulation and Order of Dismissal, Guzman, (S.D.N.Y. Jun. 25, 2018), ECF No. 39-1.   Additionally, Judge Eduardo Ramos ordered that the case be dismissed pursuant to a stipulation of settlement that contained the same language. Stipulation and Order of Dismissal, Guzman, (S.D.N.Y. Dec. 7, 2018), ECF No. 47.

**C. Procedural History**

Less than five months after settling his prior lawsuit and releasing all then-existing civil rights claims against the City and its employees, on May 31, 2018, plaintiff filed his initial complaint in the instant action contemporaneously with an order to show cause seeking a temporary restraining order against the City and its employees.   ECF No. 1.   Following a show cause hearing, the Court issued an Order on defendants' consent (the "May 31 Order") temporarily restraining the NYPD from adversely affecting plaintiff's concert performance that had been scheduled for the

following day.[5]  See ECF No. 3.  With minor modifications designed
to make clear that defendants were not precluded from informing
concert venues that gang activity could be afoot at certain
performances, the May 31 Order was thereafter extended to several
additional performances.  See ECF Nos. 15, 20, 39.

On October 30, 2018, plaintiff filed an amended complaint
alleging fifteen causes of action including, *inter alia*, newly
asserted Monell and state law claims.  See ECF No. 23 at 12-20.
On March 9, 2020, the Court granted defendants' motion to dismiss
plaintiff's Monell and state constitutional claims, but denied
defendants' motion insofar as it sought the dismissal of claims
against Detective Solomon.  ECF No. 51.

Plaintiff thereafter sought to amend his complaint again to
add additional claims.  ECF No. 53.  On July 17, 2020, the Court
informed plaintiff via letter that he could not bring his proposed
amended complaint for reasons including that it was duplicative of
the Monell claims dismissed with prejudice.  ECF No. 56.  Plaintiff
then filed a motion to reconsider the Court's July 17, 2020 letter.

---

[5]    At the show cause hearing, the Court acknowledged plaintiff's First
Amendment right to perform in the upcoming concerts but made clear that it had
no intention of interfering with the NYPD's law enforcement functions by, for
example, requiring that the NYPD remove plaintiff's name from the database.
See ECF No. 4 at 9:11-18.

ECF No. 61.  The Court denied this motion, but permitted plaintiff to move to amend his first amended complaint.  ECF No. 65.

On September 17, 2020, plaintiff filed a motion to amend his first amended complaint.  ECF No. 69.  On December 9, 2020, we instructed plaintiff to provide a copy of his complaint identifying the defendants for each claim.  ECF No. 78.  This Court held a hearing on February 4, 2021, and subsequently granted plaintiff's motion to amend in part and denied it in part, finding that several of the claims plaintiff had attempted to assert were duplicative of claims that the Court had already dismissed.  ECF No. 87.

Subsequently, on March 2, 2021, plaintiff filed the SAC, which is the subject of the instant motion.  ECF No. 92.  The SAC asserts eleven causes of action including: (1) violations of plaintiff's Fourteenth Amendment rights, (2) violations of plaintiff's First Amendment rights, (3) violations of plaintiff's Fourth and Fourteenth Amendment rights by individual police officers, (4) defamation of character, (5) slander *per se*, (6) violations by law enforcement of New York City Human Rights Law,[6] (7) tortious interference with contract, (8) intentional infliction of emotional distress, (9) negligence, (10) negligent hiring, training, and

---

[6]    The Court notes that in this claim, plaintiff includes an allegation that defendants violated the Equal Protection Clause of the Fourteenth Amendment. SAC ¶ 115.  The Court has already dismissed plaintiff's Monell claims, and subsequently, denied plaintiff's request to bring an Equal Protection Claim because such claim was already dismissed.  ECF No. 87 at 19.

supervision under state law, and (11) *respondeat superior* against the City of New York.[7]  Id.

Defendants now move to dismiss the complaint in its entirety and for judgment on the pleadings.  In response, plaintiff cross-moves to reform the 2018 Release or, in the alternative, to vacate the judgment in the 2015 Lawsuit under Federal Rule of Civil Procedure 60(b).

## II. **Legal Standard**

To withstand a Rule 12(b)(6) motion, the non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged."  Id.  While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at

---

[7]     This Court has also already noted that *respondeat superior* is not a stand-alone claim.  See ECF No. 51 at 9 (dismissing *respondeat superior* claim) and citing Farb v. Baldwin Union Free Sch. Dist., No. 05 Civ. 0596, 2006 WL 8439500, at *11 (E.D.N.Y. Mar. 3, 2006) for the proposition that "[p]laintiff's Complaint incorrectly refers to *respondeat superior* as a separate and independent cause of action when in fact it is a theory that must attach to an underlying claim.").

678 (quoting <u>Twombly</u>, 550 U.S. at 555).  "Threadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements, do not suffice." <u>Brown v. Daikin Am., Inc.</u>, 756 F.3d
219, 225 (2d Cir. 2014) (quoting <u>Iqbal</u>, 556 U.S. at 678).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6),
a district court may consider "the facts alleged in the pleadings,
documents attached as exhibits or incorporated by reference in the
pleadings and matters of which judicial notice may be taken."
<u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).
For a document to be incorporated by reference, "the complaint
must make 'a clear, definite and substantial reference to the
documents.'" <u>DeLuca v. AccessIT Grp., Inc.</u>, 695 F. Supp. 2d 54,
60 (S.D.N.Y. 2010) (quoting <u>Helprin v. Harcourt, Inc.</u>, 277 F. Supp.
2d 327, 330-31 (S.D.N.Y. 2003)).  "[W]here a document is not
incorporated by reference, the court may nevertheless consider it
where the complaint 'relies heavily upon its terms and effect,'
which renders the document 'integral' to the complaint." <u>Chambers
v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) (quoting
<u>Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>, 62 F.3d 69,
72 (2d Cir. 1995)).

"The same standard applicable to ... motions to dismiss [for
failure to state a claim upon which relief can be granted, pursuant
to Federal Rule of Civil Procedure 12(b)(6),] applies to ...

motions for judgment on the pleadings [pursuant to Federal Rule of Civil Procedure 12(c)]." Butnick v. Gen. Motors Corp., 472 F. App'x 80, 82 (2d Cir. 2012). Likewise, "[i]n adjudicating a Rule 12(c) motion, the court may consider the complaint, the answer, any written documents attached to them or incorporated by reference, and any matter of which the court can take judicial notice." Gracia v. City of New York, No. 16 Civ. 7329, 2017 WL 4286319, at *2 (S.D.N.Y. Sept. 26, 2017). Courts may take judicial notice of matters of public record, such as court filings, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citations omitted).

## III. **Discussion**

### A. **The Release Bars Plaintiff's Fourth and Fourteenth Amendment Claims**

> 1. Defendants Have Not Waived Their Right to Assert that the Release Bars Plaintiff's Claims

Defendants argue that the vast majority of plaintiff's claims are barred by the Release, including plaintiff's Fourteenth Amendment claim against defendants Chandler, Mendez, Ventura, Pinkhasov, Scalf, Nugent, and Does, along with plaintiff's Fourth and Fourteenth Amendment claims against defendants Solomon, Baez,

Smith, and Does.  Plaintiff argues that the defendants have waived their right to assert that the Release bars his claims because defendants did not rely on the Release in their prior partial motion to dismiss, in their initial answer, or in their amended answer.

Plaintiff's argument ignores the fact that the instant motion is neither a motion to dismiss plaintiff's initial complaint nor plaintiff's first amended complaint.  Rather, it is a motion to dismiss plaintiff's SAC.  Prior to this motion, defendants had not filed any responsive pleading to the SAC.  Just as plaintiff asserted new allegations in his SAC, defendants are also permitted to assert new defenses in response.  See Deutsch v. Health Ins. Plan of Greater New York, 573 F. Supp. 1443, 1445 (S.D.N.Y. 1983) ("An amended complaint represents a plaintiff's second bite at the apple, and a defendant should be accorded the same privilege."); McFadden v. Monroe Cty. Sheriff, No. 00 Civ. 6034, 2002 WL 1348508, at *3 (W.D.N.Y. Apr. 16, 2002) (explaining that defendants' response to the amended complaint "was not an amended answer, but merely an answer" and so defendants were permitted to raise previously unpled affirmative defense).  As such, defendants are permitted to advance the position that the Release bars plaintiff's claims.

Further, plaintiff's objection that defendants should have asserted this defense earlier in this case is immaterial — and indeed, borders on disingenuous — because both plaintiff and his counsel have had actual knowledge of the Release since before filing this case. "[W]hen a defendant omits an affirmative defense from his answer, a district court may nevertheless decline to deem the defense waived if the plaintiff had notice and an opportunity to respond." Jones v. Bryant Park Mkt. Events, LLC, 658 F. App'x 621, 624 (2d Cir. 2016). Plaintiff, along with his counsel, signed the Release on January 12, 2018 - less than five months before bringing this lawsuit. In contrast, because plaintiff brought the 2015 lawsuit under a different name, it is not clear that defendants knew of the Release before raising the defense in the instant motion.[8] In any event, plaintiff has had notice that defendants planned to assert that the Release barred nearly all his claims since March 22, 2021. See ECF No. 122-6 at 2. Plaintiff's opposition to this motion was not filed until almost three months later, on June 16, 2021. ECF No. 121. Plaintiff has therefore had more than sufficient notice of the defense, and this Court declines to find that defendants have waived any right to assert it. Moreover, there is no prejudice to plaintiff in

---

[8]   The Court notes that it appears that counsel for defendants did not discover the Release until about March 22, 2021. ECF No. 122-6 at 2.

allowing defendants to assert the Release because the impact of the Release is a matter of law.

> 2.  The Settlement Agreement Binds the Parties

Plaintiff next claims that the Release does not apply to the parties in this action because certain of the defendants did not sign the Release and are not in privity with the City of New York.[9] This interpretation conflicts with the plain terms of the Release, which provides in relevant part that plaintiff releases "all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of Corporation Counsel . . . ."  ECF No. 114-4 at 2.  Courts in this District have repeatedly held that the language identical to the language at issue in the Release releases all employees of the City.  See, e.g., Staples v. Officer Acolatza, No. 14 Civ. 3922, 2016 WL 4533560, at *3 (S.D.N.Y. Mar. 9, 2016) (finding release with identical language barred suit against the City and its employees for alleged conduct predating the release and collecting cases).  Here, the defendants consist of the City and police officers employed by the City.  As such, the defendants are expressly and unambiguously covered by the terms of the Release.

---

[9]    Plaintiff does not dispute that the release applies to the City of New York.

3.  The Release is Unambiguous

Further, the text of the Release itself is unambiguous as to what claims are released.  "Ambiguity is determined within the four corners of the document," not by outside sources.  GE Funding Capital Mkt. Servs. v. Neb. Inv. Fin. Auth., 767 F. App'x 110, 112 (2d Cir. 2019) (citation omitted).  The Release provides in relevant part that plaintiff releases the City and its employees from "any and all liability, claims, or rights of action alleging a violation of my civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release, including claims for costs, expenses, and attorneys' fees."  ECF No. 114-2 at 9.  In consideration of this Release, plaintiff was paid $30,000.  Id.  Numerous courts have considered the relevant language in the Release and found it unambiguous.  See, e.g., Cuadrado v. Zito, No. 13 Civ. 3321, 2014 WL 1508609, at *3 (S.D.N.Y. Mar. 21, 2014) ("This language is unambiguous."); Lloyd v. City of New York, No. 15 Civ. 8539, 2017 WL 2266876, at *3 (S.D.N.Y. May 22, 2017) (finding identical "language unambiguously precludes [plaintiff] from bringing civil rights claims that accrued before May 29, 2015 against the City or its employees.").

Plaintiff claims that the language of the Release is inherently ambiguous because, in addition to releasing all civil

15

rights claims, plaintiff further released "any and all claims . . . arising out of [his] Medicare eligibility and receipt of Medicare benefits related to the claimed injury" in the 2015 Lawsuit, ECF No. 114-2 at 9, and because contemporaneous documents sent with the Release show that plaintiff executed the Release in order to settle the 2015 Lawsuit. ECF No. 114-2. This argument is wholly unavailing. The language plaintiff references provides an additional, but not inconsistent reason for the Release. The language does not create any ambiguity as to the Release's scope. See Lloyd, 2017 WL 2266876, at *3 (rejecting the argument that attaching documents that "recite[d] the parties' agreement to dismiss this litigation in light of their settlement" to a nearly identical release limited the scope of the release) (internal quotation marks and citations omitted). There is no contradiction in plaintiff releasing numerous categories of claims in connection with settling the 2015 Lawsuit.

In support of his argument that the text is ambiguous, plaintiff relies heavily on Smith v. New York, No. 12 Civ. 4851, 2014 WL 6783194 (E.D.N.Y. Dec. 2, 2014). Smith is plainly inapposite. In Smith, plaintiff signed a release where, in addition to stating that plaintiff released "any and all liability, claims, or rights of action alleging a violation of [] civil rights," the release and stipulation continued to state that

16

"[t]his stipulation shall not be admissible in, nor is it related to, any other litigation." Smith, 2014 WL 6783194, at *7. The Court found that this apparent contradiction regarding whether the stipulation could apply in other litigation made the stipulation ambiguous. Id. While plaintiff contends that the language in the release in Smith is "nearly identical to the language in the General Release," ECF No. 121 at 12, he omits that the key difference between the release in Smith and the Release here is that the Release here does not include the language that created the ambiguity in Smith. Here, there is no language, either in the Release itself or in the additional documents signed contemporaneously, that limits the admissibility of the Release, and thus, no contradiction that could give rise to an ambiguity.[10] Smith is therefore entirely irrelevant.

### 4. All Federal Claims but the First Amendment Claim Are Plainly Released by the Release

Further, it is clear that the Release's language regarding "civil rights claims" applies to plaintiff's federal claims. Plaintiff has brought claims under Section 1983, in which he alleges that the certain of the defendants violated (1) his

---

[10]     The Court also notes that in Smith, the plaintiff suffered from numerous mental conditions, read only at a second-grade level, and was unrepresented by counsel when he signed the release. Smith, 2014 WL 6783194, at *5. In contrast, plaintiff here was represented by counsel, who also signed the Release. ECF. No. 114-2 at 9.

Fourteenth Amendment right to substantive due process by accusing him of being a gang member and preventing him from performing at concerts in 2017, (2) his First Amendment rights, and (3) his Fourth and Fourteenth Amendment rights through questioning plaintiff and seizing his property and DNA sample on May 15, 2017. Plaintiff attempts to avoid the plain language of the Release by contending that these causes of action are not barred by the Release because they are claims for civil liberties, rather than civil rights.   This distinction is purely semantic.   In fact, plaintiff himself describes his claims as civil rights claims in the SAC.   SAC ¶ 4 (claiming jurisdiction is proper because plaintiff "seeks to recover damages and secure relief under the laws providing for the protection of *civil rights*") (emphasis added).   Regardless of plaintiff's choice of language, courts in this Circuit have repeatedly found that claims brought under Section 1983 are civil rights claims.   See Dinkins v. Decoteau, No. 15 Civ. 8914, 2016 WL 3637169, at *3 (S.D.N.Y. June 29, 2016) (holding a release of "civil rights claims" releases claims brought under § 1983); Lloyd, 2017 WL 2266876, at *3 (same).   As such, plaintiff's Fourth and Fourteenth amendment claims are plainly "civil rights claims" as described in the Release.

Moreover, with the exception of certain facts giving rise to the First Amendment Claim, each of the facts giving rise to these

federal claims is alleged to have occurred in 2017, and thus are covered and barred by the Release.  Plaintiff's first cause of action is a Fourteenth Amendment claim for violation of his right to substantive due process against defendants Chandler, Mendez, Ventura, Pinkhasov, Scalf, Nugent, and Does.  This claim arises from these defendants allegedly "falsely accusing him of being a 'gang member' and later using that false classification as justification to prevent him from performing at concert's [sic] in which he was booked, including on September 19, 2017 at SOB's and October 19, 2017 at Parrilla Latina."[11]  SAC ¶ 64.  Plaintiff also alleges Fourth and Fourteenth Amendment claims against Defendants Solomon, Baez, Smith, and Does that arise out of the allegations of illegal searches and seizures on May 15, 2017.  Id. ¶¶ 85-91. Since all relevant events giving rise to these claims occurred before January 12, 2018, these claims are thus within "any and all

---

[11]   Plaintiff also alleges in connection with his Fourteenth Amendment due process claim that defendants made false statements to members of the media that he was "with Dub City" and that defendants made statements about his arrests as a minor, without referencing the dates of these statements.  SAC ¶ 65.   However, at oral argument on February 4, 2021, plaintiff's counsel represented that these statements were made in May of 2017, and thus are subject to release.  ECF No. 85 at 14:22-24. But even assuming that these statements were made after the date of the Release, plaintiff has not alleged any injury arising from these statements. "[I]n order to meet the minimum constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant and is likely to be redressed by the requested relief." Sullivan v. Syracuse Hous. Auth., 962 F.2d 1101, 1106 (2d Cir. 1992) (citations and internal quotation marks omitted).  As such, this claim cannot survive a motion to dismiss.

liability, claims, or rights of action alleging a violation of my civil rights . . . from the beginning of the world to the date of this General Release," ECF No. 114-2 at 9, and are therefore covered and barred by the plain language of the Release.

### B. Plaintiff Lacks Standing to Assert his First Amendment Claims

The only remaining federal claim is plaintiff's First Amendment claim. Plaintiff's complaint alleges that his First Amendment Rights have been violated in two ways. We address them seriatim.

First, plaintiff alleges that his First Amendment rights were violated because his performances in 2017 were cancelled. SAC ¶¶ 73-74. Since this claim arises out of events in 2017, it is clearly barred by the Release.

Second, plaintiff alleges that his speech is "chilled" because he does not know who else is on the gang membership list. Id. ¶ 78. This allegation fails to state a claim because plaintiff does not articulate how his lack of knowledge of who else is in the gang database could possibly chill his speech. Plaintiff alleges only that defendants' "inclusion of plaintiff into the NYPD's 'gang database' and/or Criminal Group List chills his ability to associate with individuals and engage in activities such as speech and/or assembly because he has no way of knowing who else is listed on the NYPD's 'gang database' and/or Criminal

Group List." <u>Id</u>.  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  <u>Brown</u>, 756 F.3d at 225 (quoting <u>Iqbal</u>, 556 U.S. at 678).

Nor do such vague assertions support a finding of standing. Plaintiff lacks standing to bring this claim because he fails to describe adequately how any harm resulted from his inclusion in this list, or what relief he is seeking to remedy this alleged wrong.  "[I]n order to meet the minimum constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant and is likely to be redressed by the requested relief."  <u>Sullivan v. Syracuse Hous. Auth.</u>, 962 F.2d 1101, 1106 (2d Cir. 1992) (citations and internal quotation marks omitted).  That is, to bring a cognizable claim, plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'"  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992) (citations omitted). Plaintiff's vague assertion that his speech is chilled, without additional details, does not meet this standard.[12]

---

[12]    The Court notes that, to the extent plaintiff alleges reputational injury by being included in the gang database, that injury appears to be self-

**C. This Court Declines to Alter the Release or Provide Relief from a Judgment through Federal Rule of Civil Procedure 60 (b)**

Plaintiff argues that, should the Court find the Release bars his claims, the Court should reform the Release to release only the claims asserted in the 2015 lawsuit or to vacate the final judgment in the 2015 lawsuit — a settlement and judgment that were signed by another Judge in this District. Plaintiff does not meet his burden on either of these arguments.

In order to reform a contract, such as the Release, there must be a mutual mistake, which the party seeking to reform the contract must establish by clear and convincing evidence. Collins v. Harrison-Bode, 303 F.3d 429, 434 (2d Cir. 2002). Plaintiff's only support for the proposition that there was a "mutual mistake" is his claim that he intended only to the release the claims in the 2015 Lawsuit. This is insufficient to establish a "mutual mistake." A party's subjective understanding of the text does not control when the text itself is unambiguous. See Bloomfield v. Bloomfield, 97 N.Y.2d 188, 193 (N.Y. 2001) ("[W]hile we must be concerned with what the parties intended, we generally may consider

---

inflicted. Plaintiff was not a member of the gang database at the time he filed his initial complaint, in which he publicly alleged he was a member of the database. See ECF No. 37-2, ECF No. 51 at 7, n.5. Nor has he alleged any independent disclosure of his inclusion on the database. Rather, he was added to the database months after this case was filed, a fact that was only revealed as part of this litigation to refute plaintiff's unwarranted assertion in his original complaint. Id.

their intent only to the extent that it is evidenced by the writing."); Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999) ("[A] party cannot create an ambiguity in an otherwise plain agreement merely by urging different interpretations in the litigation.")(internal quotation marks and citation omitted). Moreover, it begs credulity that plaintiff's counsel could understand a release of "any and all liability, claims, or rights of action alleging a violation of my civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release . . ." to release only the claims from the 2015 Lawsuit. The text is clear on its face that the Release releases all civil rights claims prior to the date of the Release. As such, there is no grounds for this Court to reform the contract.

Although plaintiff repeatedly refers to "limiting language" in the second paragraph of the Release and in contemporaneous documents, the language plaintiff describes only explains the circumstance of the Release, namely that it was made as part of a settlement of plaintiff's 2015 Lawsuit against the City. See e.g., ECF No. 121 at 2, 10. As described supra, this is not sufficient to demonstrate mistake or ambiguity. Additionally, plaintiff's assertion that the City should have proven that there was no mistake by submitting a declaration from the attorney who

23

negotiated the Release, ECF No. 137 at 6, misstates the burden on this issue: plaintiff, not the City, must show that the Release should be reformed.

While Rule 60(b) provides Courts with the ability to vacate a judgment in "extraordinary circumstances," Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988), plaintiff has failed to show these extraordinary circumstances.  The Release clearly states that plaintiff released all civil rights claims and any related state law claims prior to January 12, 2018, along with certain Medicare claims, in consideration for $30,000. ECF No. 114-2 at 9. Corporation Counsel expended taxpayer dollars to resolve a dispute with a represented plaintiff using a standard and traditional release.  The settlement was then approved by another judge in this Court.  Stipulation and Order of Dismissal, Guzman, (S.D.N.Y. Dec. 7, 2018), ECF No. 47.  These facts are the opposite of "extraordinary circumstances."

### D. The State Law Claims Are Dismissed for Lack of Supplemental Jurisdiction

As there are no remaining federal claims, this Court declines to exercise supplemental jurisdiction over any state law claims that may survive the Release.  Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

1367(c)(3); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."). As such, we do not address the arguments regarding state law claims.

## IV. Conclusion

For the foregoing reasons, this Court dismisses plaintiff's complaint in its entirety without prejudice and respectfully directs the Clerk to terminate the open motions and close this case.

**SO ORDERED.**

Dated:    New York, New York
          November 16, 2021

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE